People v Marconi (2020 NY Slip Op 51483(U))

[*1]

People v Marconi (Joseph)

2020 NY Slip Op 51483(U) [70 Misc 3d 126(A)]

Decided on December 3, 2020

Appellate Term, Second Department

Published by New York State Law Reporting Bureau
pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be
published in the printed Official Reports.

Decided on December 3, 2020
SUPREME COURT, APPELLATE TERM, SECOND
DEPARTMENT, 9th and 10th JUDICIAL DISTRICTS
PRESENT: : THOMAS A. ADAMS, P.J., BRUCE E. TOLBERT, TERRY JANE
RUDERMAN, JJ

2018-846 W CR

The People of the State of New York,
Respondent,
against
Joseph Marconi, Appellant. 

John R. Lewis, for appellant.
Westchester County District Attorney (Raffaelina Gianfrancesco and Steven A. Bender of
counsel), for respondent.

Appeal from judgments of the City Court of Mount Vernon, Westchester County (Adrian N.
Armstrong, J.), rendered June 29, 2017. The judgments convicted defendant, upon jury verdicts,
of driving while intoxicated (per se) and driving while intoxicated (common law), respectively,
and imposed sentences. The appeal from the judgments of conviction brings up for review an
order of that court dated December 2, 2016, denying defendant's motion to suppress
evidence.

ORDERED that the judgments of conviction are affirmed.
Defendant was arrested at a checkpoint and charged with aggravated driving while
intoxicated (per se) (Vehicle and Traffic Law § 1192 [2-a] [a]) and driving while
intoxicated (common law) (Vehicle and Traffic Law § 1192 [3]). His counsel moved to,
among other things, suppress all of the evidence obtained from the search subsequent to the stop
of the vehicle defendant was driving, on the ground that the checkpoint that had been set up by
the police was unconstitutional. At a hearing, the supervising sergeant testified that, prior to the
checkpoint being set up, he had instructed his officers about the objectives of the checkpoint,
where it would take place, that every vehicle was to be stopped, and that the officers were to
check the drivers' registrations, the vehicles' inspection stickers, and whether the motorists were
wearing seat belts. The officers were also instructed to determine whether the drivers were under
the influence of drugs or alcohol. Police vehicles were parked on both sides of the checkpoint
with their lights activated, traffic cones were placed in the center of the checkpoint, and the
officers wore yellow reflective safety vests. The sergeant further testified that there is a written
guideline regarding how safety [*2]checks are to be implemented
and that he did not consult the manual prior to implementing the safety check, because he was
familiar with the guidelines. The City Court found that the checkpoint was operated in a manner
that met constitutional requirements and denied the motion to suppress.
At a jury trial, the arresting officer testified that, as defendant's pickup truck came closer to
the checkpoint, the truck almost struck an officer. After directing defendant to pull over, the
officer noticed the odor of an alcoholic beverage emanating from defendant's breath. Defendant
indicated that he was coming from a party where he had been drinking alcoholic beverages. After
administering several field sobriety tests, which defendant agreed to take, the officer determined
that defendant was at least impaired and transported him to the police station where a chemical
breath test was administered to defendant. The results of this test indicated a blood alcohol level
of .18 of one percent by weight. During the trial, it was discovered that a video, taken of
defendant while he was at the police station, had not been produced, and that, since no request
had been made for the recording, it no longer existed because it had been taped over after 30
days. Defense counsel requested an adverse inference charge, and, after off-the-record
discussions, the parties stipulated as to the wording of the adverse inference charge. The court,
without objection by defense counsel, read the agreed-upon charge to the jury. The jury found
defendant not guilty of aggravated driving while intoxicated. However, defendant was found
guilty of the lesser included offense of driving while intoxicated (per se) (Vehicle and Traffic
Law § 1192 [2]) and driving while intoxicated (common law).
On appeal, defendant contends that the evidence should be suppressed on the ground, among
others, that the People had failed to establish the constitutionality of the police checkpoint at
which defendant had been arrested. In addition, defendant contends that he was denied the
effective assistance of counsel because his attorney failed to object to the lack of an adverse
inference charge to the jury regarding the missing video evidence and that counsel failed to
request a missing witness charge when the People did not call the officer who was almost struck
by defendant's vehicle at the checkpoint.
The People met their burden of establishing that the checkpoint had been created and
operated in a manner "consistent with the Fourth Amendment and New York Constitution, article
I, § 12" (People v Manahan, 23
Misc 3d 134[A], 2009 NY Slip Op 50802[U], *1 [App Term, 2d Dept, 2d, 11th & 13th
Jud Dists 2009]). The testimony of the supervising sergeant established that the creation and
operation of the checkpoint had not been left to the discretion of the officers in the field (see
Matter of Muhammad F., 94 NY2d 136, 142 [1999]; People v Mikalsen, 52 Misc 3d 142[A], 2016 NY Slip Op
51197[U] [App Term, 2d Dept, 9th & 10th Jud Dists 2016]), that every driver had been
stopped (see City of Indianapolis v Edmond, 531 US 32, 39 [2000]; Matter of
Muhammad F., 94 NY2d at 146; People v Mannix, 63 Misc 3d 131[A], 2019 NY Slip Op 50411[U]
[App Term, 2d Dept, 9th & 10th Jud Dists 2019]), and that lighting and safety concerns, as
well as concerns about "fair warning of the existence of the checkpoint," had been addressed
(People v Scott, 63 NY2d 518, 526 [1984]).
Among permissible checkpoint objectives is the concern for traffic safety (see People v [*3]Edwards, 101 AD3d 1643, 1644 [2012] [checkpoint proper
where police were looking for "registration, inspection, seat belt and other traffic related
infractions"]; People v Dugan, 57
AD3d 300, 300 [2008] [same]; People v Burton, 8 AD3d 187, 188 [2004] [same]), and there is no
reason to doubt that this concern represented the "primary purpose" of the checkpoint involved
herein (People v Jackson, 99 NY2d 125, 129 [2002]; see People v Scott, 63
NY2d at 527 ["deterrence" a legitimate enforcement objective]; cf. People v Velez, 110 AD3d 449,
450 [2013]; People v Trotter, 28
AD3d 165, 169-170 [2006]). Finally, "there is no authority that expressly mandates the
promulgation of [written] guidelines" for the arrangement and use of a checkpoint (People v Manahan, 23 Misc 3d
134[A], 2009 NY Slip Op 50802[U], *1). Consequently, the suppression motion was
properly denied.
With respect to the adverse inference charge, there were discussions held off the record
concerning this charge. As defendant made no motion pursuant to CPL 440.10 to challenge the
quality of trial counsel's representation on this ground, we do not have the benefit of the
appropriate exploration of dehors the record matters (see People v Jarvis, 25 NY3d 968, 973 [2015]; People v
Brown, 45 NY2d 852, 853 [1978]; People v Rana, 48 Misc 3d 130[A], 2015 NY Slip Op 51029[U], *2
[App Term, 2d Dept, 2d, 11th & 13th Jud Dists 2015]), in particular, that of trial strategy
(see People v Rivera, 71 NY2d 705, 709 [1988]), to which appellate courts of review
accord considerable deference (see People v Benevento, 91 NY2d 708, 712 [1998];
People v Satterfield, 66 NY2d 796, 799-800 [1985]). Limiting our review to the
on-the-record aspects of this claim, we find that defendant failed to establish that he was
deprived of the effective assistance of counsel. We note that the court gave an adverse inference
charge with respect to the missing video tape evidence to which counsel agreed.
Moreover, defendant was not deprived of the effective assistance of counsel because his trial
counsel failed to request a missing witness charge with respect to the officer who was almost
struck by defendant's vehicle. A "missing witness" is an "uncalled witness [who] is
knowledgeable about a material issue upon which evidence is already in the case [who] . . .
would naturally be expected to provide noncumulative testimony favorable to the party who has
not called him, and [who] is available to such party" (People v Kitching, 78 NY2d 532,
536 [1991]). In other words, three preconditions would have had to have been met for the trial
court to have granted a request for a missing witness charge here: (1) the uncalled witness had
knowledge of an issue material to the trial; (2) the witness was available and in the control of the
People, the party against whom the inference was sought; and (3) the witness could be expected
to provide noncumulative testimony that was favorable to the People (see People v
Savinon, 100 NY2d 192, 197 [2003]; People v Locenitt, 157 AD3d 905, 907 [2018]; People v Krupnik, 46 Misc 3d
142[A], 2015 NY Slip Op 50174[U] [App Term, 2d Dept, 2d, 11th & 13th Jud Dists
2015]).
Even assuming that defendant, as the proponent of the missing witness charge, met his initial
burden of demonstrating prima facie entitlement thereto, we find that the People established that
the uncalled witness's testimony would have been cumulative since Officer Vitelli testified that
he observed defendant's vehicle almost striking the uncalled witness police officer at the
checkpoint (see People v Smith, 33
NY3d 454 [2019]; People v
Samaroo, 137 AD3d 1308, 1309 [2016]; People [*4]v Nelson, 32 Misc 3d
129[A], 2011 NY Slip Op 51303[U] [App Term, 2d Dept, 9th & 10th Jud Dists 2011]).
In any event, even assuming error was committed, the error must be deemed harmless beyond a
reasonable doubt, in view of the overwhelming evidence of defendant's guilt (see People v
Crimmins, 36 NY2d 230 [1975]).
Upon a review of the evidence and the circumstances of this case, insofar as permitted by the
existing record (see People v
Troche, 81 AD3d 990, 991 [2011]; People v Lopez, 2 AD3d 234 [2003]), and "viewed in totality and
as of the time of the representation" (People v Oliveras, 21 NY3d 339, 346 [2013]), we find that
defendant was afforded meaningful representation and the effective assistance of counsel under
both the New York State Constitution (see People v Benevento, 91 NY2d at 713-714;
People v Baldi, 54 NY2d 137, 147 [1981]) and the United States Constitution (see
Strickland v Washington, 466 US 668 [1984]).
Accordingly, the judgments of conviction are affirmed.
ADAMS, P.J., TOLBERT and RUDERMAN, JJ., concur.

ENTER:
Paul Kenny
Chief Clerk
Decision Date: December 3, 2020